**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **CRIM. NO. JKB-09-0512** |
| **CRAIG ALLEN COREY,** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * *

**MEMORANDUM AND ORDER**

The Defendant Craig Allen Corey was sentenced to a period of 210 months' imprisonment after pleading guilty to various offenses related to sex trafficking, prostitution, and drug distribution. (ECF No. 105.) Corey has served roughly seventy percent of his sentence and is currently incarcerated at FCI Elkton in Ohio. After the onset of the COVID-19 pandemic crisis, Corey filed an Emergency Motion for a Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 127); *see In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case 1:00-mc-00308, Standing Order 2020-05 (D. Md. Mar. 20, 2020). This Court denied Corey's motion because, prior to filing it, he had not exhausted his administrative remedies. (ECF No. 130.) Subsequently, after filing a new request with the Federal Bureau of Prisons ("BOP"), which the BOP denied, Corey again moved to reduce his sentence (ECF No. 131) in light of COVID-19. No hearing is necessary. *See* Local Rules 105.6, 207 (D. Md. 2018). For the reasons set forth below, the Motion will be DENIED.

Motions for compassionate release are governed by 18 U.S.C. § 3582(c)(1)(A). Under this section, a district court may modify a convicted defendant's sentence when "extraordinary and compelling reasons warrant such a reduction" and the court has "consider[ed] the factors set forth

in section 3553(a) to the extent that they are applicable." *Id.* A defendant may move for compassionate release under § 3582(c)(1)(A) only after he or she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Corey filed a request with the warden of his institution on April 14, 2020. (ECF No. 131-3.) The government argues that Corey's motion has not satisfied the procedural requirements of § 3582(c)(1)(A) because his request to the warden does not mention Corey's health issues that allegedly increase his susceptibility to COVID-19. (*See* ECF No. 137 at 19.) The Court need not decide whether Corey properly exhausted his administrative remedies because the Court will deny his motion on other grounds. Although Corey has provided evidence establishing the existence of "extraordinary and compelling reasons" for his release, such a release is not consistent with the factors set forth in 18 U.S.C. § 3553(a).

### *I. Extraordinary and Compelling Reasons*

Under 28 U.S.C. § 994(t), the U.S. Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The Commission has stated that "extraordinary and compelling reasons" exist where: (1) a defendant has a terminal or serious medical condition; (2) a defendant with deteriorating health is at least sixty-five years old and has served ten years or seventy-five percent of his or her term of imprisonment; (3) certain family circumstances arise in which a defendant must serve as a caregiver for minor children or a partner; or (4) the Bureau of Prisons ("BOP") determines other circumstances create "extraordinary and compelling reasons" for sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1 (A)–(D).

This mandate and policy statement, however, predate the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when B[O]P finds they are not appropriate." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). This Court and many others have determined that under the First Step Act, "BOP is no longer the exclusive arbiter of what constitutes other 'extraordinary and compelling reasons,'" and that courts may now "independently determine what constitutes other 'extraordinary and compelling reasons' for compassionate release[.]" *United States v. Richardson*, Crim. No. JKB-09-0288, 2020 WL 3267989, at *2 (D. Md. June 17, 2020). This Court likewise has held that "medical conditions which make a defendant uniquely susceptible to complications from COVID-19 create 'extraordinary and compelling reasons' to grant compassionate release pursuant to § 3582(c)(1)(A)." *Id. See also United States v. Lewin*, Crim. No. SAG-15-198, 2020 WL 3469516, at *3 (D. Md. June 25, 2020) (A defendant can establish extraordinary and compelling reasons by demonstrating that he "(1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released.").

The government argues that Corey has not satisfied the "extraordinary and compelling" reasons requirement because he is thirty-four years old and has already contracted, and ostensibly recovered from, COVID-19. Corey's BMI of 34.7 (*see* ECF No. 34-4) renders him obese and increases his "risk of severe illness from COVID-19," according to the CDC. *See* Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL, http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed Oct. 5, 2020). Because obesity increases one's risk of having a

serious case of COVID-19 at any age, the Court agrees with Corey that his health situation satisfies the "extraordinary and compelling" reasons requirement.

Though it is undoubtedly a positive sign that Corey appears to have recovered following his positive COVID-19 test in June (*see* ECF No. 137-1), this recovery is not firm evidence that Corey is no longer at a heightened risk of severe illness. As of this writing, it remains unknown both (1) to what degree individuals who recover from COVID-19 benefit from long-term immunity to the various strains of the virus, and (2) what sort of future complications an individual like Corey might suffer following an apparent recovery. *See, e.g.*, Interim Guidelines for COVID-19 Antibody Testing, CTRS. FOR DISEASE CONTROL, http://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antibody-tests-guidelines.html (last accessed Oct. 5, 2020) ("[I]t remains uncertain to what degree and for how long individuals with antibodies (neutralizing or total) are protected against reinfection with SARS-CoV-2[.]"). Judge Grimm, Judge Hollander, and Judge Chuang of this District have all found that medical conditions that increase an inmate's susceptibility to severe illness may constitute "extraordinary and compelling reasons," even if the inmate has already contracted and apparently recovered from COVID-19. *See, e.g.*, *United States v. Williams*, Crim. No. PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020); *United States v. Kess*, Crim. No. ELH-14-480, 2020 WL 3268093 (D. Md. June 17, 2020); *United States v. Fletcher*, Crim. No. TDC-05-0179-01, 2020 WL 3972142 (D. Md. July 13, 2020).

Further, though conditions are better at FCI Elkton than they were in the spring, the Court notes that COVID-19 does not appear to be altogether absent from the facility; as of this writing, the BOP website reports that there are currently two prisoners at FCI Elkton who have tested positive for the virus and not yet recovered. *See* COVID-19 Cases, BUREAU OF PRISONS,

http://www.bop.gov/coronavirus/ (last accessed Oct. 5, 2020). Thus far, FCI Elkton has unfortunately lost nine inmates to COVID-19. *Id.*

In sum, though Corey is perhaps not among the group of inmates with the very highest risk of severe illness or death, the evidence before the Court indicates that he is still at a substantially elevated risk from COVID-19. Taking into account his vulnerability, including the fact that he has already contracted the virus (whichever way that cuts), and considering the totality of the circumstances, the Court concludes that Corey has presented extraordinary and compelling reasons for sentence reduction.

***II. Section 3553(a) Factors***

Having determined that Corey has presented "extraordinary and compelling reasons" supporting compassionate release, the Court must still consider whether the § 3553(a) factors permit Corey's release. Section 3553(a) states that courts shall consider a variety of factors when imposing a sentence, including: "(1) [Defendant's] personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants." *United States v. Bryant*, Crim. No. CCB-95-202-3, 2020 WL 2085471, at *4 (D. Md. Apr. 30, 2020).

The Court has reviewed the relevant factors and finds that the § 3553(a) factors do not favor Corey's release. Corey worked with his co-conspirators to coerce multiple women, including a minor, to engage in prostitution. (ECF No. 90 at 12.) Corey used his earnings from the prostitution to purchase illegal drugs, provided drugs to his female victims, and, most significant,

was aware that his co-conspirators were beating those victims. (*Id.* at 13–14.) During Corey's sentencing hearing, Judge Motz described the case as "off-the-charts terrible" and "awful." (ECF No. 111 at 15–16.) Judge Motz questioned why Corey was receiving such a low sentence, rather than a sentence of "at least 20 or 25 years," but agreed to the 210-month sentence proposed by the parties in the interest of protecting the "anonymity" and "integrity" of Corey's victims, who preferred not to testify against him in court. (*Id.* at 16, 23.)

Releasing Corey would reduce his sentence—which Judge Motz already found surprisingly low in light of Corey's "terrible" actions—by approximately one-third. Moreover, Corey still poses a danger to the community due to the seriousness of his offense, and due to his desire to be released into the same rural Ohio community where he recruited his victims, including a minor victim. (*See* ECF Nos. 90, 131-1.)

Denying compassionate release is not a decision the Court makes lightly. The Court acknowledges the very real danger posed by the COVID-19 pandemic, and the serious concern that Corey and his family undoubtedly feel. Were it within the Court's power to reduce that danger while still imposing a fitting sentence on Corey, the Court would do so. The Court acknowledges the awful track record at FCI Elkton. But having considered the factors enumerated under § 3553(a), the Court finds that release at this time would be inappropriate and that the existing sentence remains the sentence that is "sufficient, but not greater than necessary" to comply with the purposes of incarceration. 18 U.S.C. § 3553(a). Corey's Motion for Compassionate Release (ECF No. 131) is accordingly DENIED.

DATED this 6 day of October, 2020.

BY THE COURT:

James K. Bredar
Chief Judge